IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JERMELL GREEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )  Case No. 3:15-cv-00589-SMY |
| | ) |
| SALVADOR A. GODINEZ, | ) |
| THOMAS SPILLER, | ) |
| WEXFORD HEALTH SOURCES, INC., | ) |
| VENERIO M. SANTOS, | ) |
| T.B. FINNEY, | ) |
| A. SHAW, | ) |
| DR. SHAH, | ) |
| ANGEL RECTOR, | ) |
| MARSHA HILL, | ) |
| L. RIDGEWAY, | ) |
| CENTRALIA WARDEN, | ) |
| JANE DOE 1, | ) |
| JANE DOE 2, | ) |
| JANE DOE 3, and | ) |
| JANE DOE 4,[1] | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Jermell Green is currently incarcerated at the Pinckneyville Correctional Center in Pinckneyville, Illinois, but was previously incarcerated at the Centralia Correctional Center in Centralia, Illinois. (Doc. 1 at 1-2.) Proceeding *pro se*, Green has filed a complaint pursuant to 42 U.S.C. § 1983 against a number of prison officials and medical staff, alleging that all involved improperly treated his hernia during his tenure at both prisons. (*Id.* at 4-10.) Green seeks a declaratory judgment, monetary damages, and preliminary injunctive relief. (*Id.* at 10-11.)

---

[1] The caption groups the Jane Does into an Unknown Party designation. Because Green refers to the Jane Does by number in his complaint, the **CLERK** is **DIRECTED** to remove the Unknown Party designation and add Jane Doe 1, Jane Doe 2, Jane Doe 3, and Jane Doe 4 to the case.

This matter is now before the Court for a preliminary review of Green's complaint pursuant to 28 U.S.C. § 1915A. Under 28 U.S.C. § 1915A, the Court shall review a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a government entity." During this preliminary review under § 1915A, the court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint," if the complaint "is frivolous, malicious, or fails to state a claim on which relief may be granted" or if it "seeks monetary relief from a defendant who is immune from such relief."

## Background

Green's hernia issues began while he was working out in the Centralia Correctional Center's institutional gym in early 2014. (*Id.* at 4.) While lifting weights, Green experienced a sharp pain in his groin, and asked for medical assistance. (*Id.*) Green saw a health care nurse on March 12, 2014, who Green has dubbed Jane Doe 4 in his narrative.[2] (*Id.*) The nurse referred Green to a physician at the prison. (*Id.* at 7.) Green saw Dr. Santos the same day – Santos diagnosed Green with an inguinal hernia and prescribed him a hernia belt for treatment. (*Id.* at 4.) Shortly thereafter, Green was placed in Centralia's segregation unit for reasons that he says are unrelated to this case, and was later moved to Pinckneyville. (*Id.*)

After his arrival at Pinckneyville, Green suffered from pain and bleeding from his penis. (*Id.*) He complained to prison officials and was seen by medical staff at Pinckneyville; an unnamed doctor in the medical unit told Green that nothing could be done. (*Id.* at 4-5.) After his visit with the unnamed doctor, Green returned to segregation, and yet again experienced bleeding

---

[2] Green says he saw Jane Doe 4 on February 11, 2014. He cites an exhibit for this point, but that exhibit states that the visit occurred on March 12, 2014. He takes no issue with the exhibit's accuracy, so the February 11, 2014 date appears to be a typo. Moreover, Green relies on the exhibit for support, so the March 12, 2015 date controls. *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) ("To the extent that an exhibit attached to or referenced by the complaint contradicts the complaint's allegations, the exhibit takes precedence.").

from his groin. (*Id.* at 5.) He showed his underwear to Corrections Officer Miller to prove it, and Miller took Green to see Dr. Shah, the "segregation unit doctor." (*Id.*) Green showed Shah his bloody underwear and Shah examined Green's groin area. (*Id.*) Shah told Green that all he could do was prescribe an ice pack and pain pills, and sent Green on his way. (*Id.*)

From June 2014 to September 2014, Green returned several times to the unit at Pinckneyville, still suffering from problems with his hernia. Nurse Hill saw Green on June 29, 2014 and noted the appearance of a lump and blood on Green's underwear. (*Id.*) Three Jane Doe nurses – designated Jane Doe 1, 2, and 3 in Green's complaint – saw Green on July 30, July 31, and August 12, 2014, respectively. (*Id.* at 6.) Jane Doe 1 and 2 observed blood on Green's underwear, while Jane Doe 3 noted bleeding from his penis and a hernia. (*Id.*) Nurse Practitioner Rector saw Green on August 13, 2014, and noted his hernia, his bleeding, and his fear related to these symptoms. (*Id.* at 6-7.) Green was then seen by radiology, and x-rays indicated a hernia. (*Id.* at 7.) Nurse Peek and Nurse Ridgeway saw Green on September 1 and September 22, 2014, respectively, and documented blood on his boxers. (*Id.* at 6.) Both nurses chalked the blood up to excessive masturbation, and told Green to let the irritation heal. (*Id.*)

By 2015, Green's problems had still not improved. On February 4, 2015, he again saw Rector; he told her that he was experiencing intense pain, that he had been in pain for over a year, and that he wanted surgery. (*Id.* at 7.) Rector told Green there was nothing she could do and that he should continue to wear the hernia belt. (*Id.*) On February 18, 2015, Green saw Jane Doe 3, a nurse in the unit, again requesting surgery. (*Id.*) On March 2, 2015, Green saw Ridgeway, telling her that his hernia was "a golf-ball size" and that he wanted help. (*Id.*) Despite his many visits, Green claims that all of the medical staff "refuse[d] to treat" him. (*Id.*)

Green says he filed grievances about his lack of hernia treatment, but received no relief through the prison administrative process. (*Id.* at 4.) Unsatisfied with the prison's response, Green filed his § 1983 complaint in this Court on May 28, 2015. (*Id.* at 1.)

## Discussion

Green has tried to subdivide his case into two discrete counts, but both of his separate counts are species of Eighth Amendment deliberate indifference claims, so his effort to subdivide is a bit confusing. He has also failed to tease out his claim against Wexford Health Sources, whose liability is evaluated under a slightly different test than his claims against prison staff. To facilitate the management of future proceedings, and in accordance with the objectives of Federal Rules of Civil Procedure 8 and 10, the Court finds it appropriate to re-divide the claims in Green's *pro se* complaint into the following counts, as shown below. The parties and the Court will use these designations in all pleadings and orders, unless otherwise directed by the Court. The designation of these counts does not constitute an opinion as to their merit.

> **COUNT 1:** Godinez, the Centralia Warden, Spiller, Santos, Shah, Rector, Ridgeway, Shaw, Finney, Hill, and Jane Does 1 through 4 failed to provide treatment or provided inadequate treatment for Green's hernia condition, in violation of the Eighth Amendment of the United States Constitution.
>
> **COUNT 2:** Wexford Health Sources promulgated rules, regulations, policies, and procedures for the medical care of prisoners, and in doing so violated the Eighth Amendment of the United States Constitution.

Green's complaint focuses primarily on individual capacity claims against various prison staff for failure to treat his hernia condition, so the Court will start there (**Count 1**). To put forth a viable medical claim under the Eighth Amendment, Green must allege that prison officials were "deliberately indifferent to his serious medical needs." *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000). This claim involves a two-part inquiry: the plaintiff must first show that his

condition "was objectively serious," and he must then demonstrate that each named defendant acted with a sufficiently culpable state of mind concerning that condition. *Id.*

For screening purposes, Green has alleged the existence of an objectively serious medical condition. An objectively serious condition is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001). Factors that indicate a serious condition include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). Here, Green's hernia condition qualifies as a serious condition for screening review purposes.

To bring an Eighth Amendment claim, Green must also allege that each of the named defendants was deliberately indifferent to his serious medical condition – in other words, that each named defendant acted with "intentional or criminally reckless disregard." *Estrada v. Reed*, 346 F. App'x 87, 91 (7th Cir. 2009). This is a defendant-by-defendant inquiry, so the Court will evaluate the allegations against each group of defendants named in Green's case in turn.

The allegations against the Centralia medical staff, who first dealt with Green's hernia before his transfer to Pinckneyville, do not suggest anything like deliberately indifferent conduct. Deliberate indifference is a weighty state of mind requirement – allegations of "medical malpractice, negligence, or even gross negligence" do not "equate to deliberate indifference." *Johnson v. Doughty*, 433 F.3d 1001, 1012-13 (7th Cir. 2006). In this vein, a prisoner is "not entitled to demand specific care" or "the best care possible" under the Eighth Amendment, so allegations amounting to mere dissatisfaction with a doctor's initial course of treatment do not

usually state a claim. *Forbes v. Edgar*, 112 F.3d 262, 264 (7th Cir. 1997). Rather, when a prisoner alleges that he received treatment from a physician in the first instance, he can state a claim only if the treatment received was "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261-62 (7th Cir. 1996). This exists only in "the most extreme situations," *Snipes v. DeTella*, 95 F.3d 586, 591-92 (7th Cir. 1996), like when the provider's decision was "so far out of bounds that it was blatantly inappropriate," *King v. Kramer*, 680 F.3d 1013, 1019 (7th Cir. 2012).

Nothing blatantly inappropriate is alleged concerning the Centralia staff's conduct. As for Jane Doe 4 and Santos, Green says that Jane Doe 4 saw him after his strain in the gym and that Santos prescribed him a hernia belt. That does not allege a substantial departure from medical judgment, as a hernia belt is a common first-stage treatment for a hernia. *See*, *e.g.*, *Karsten v. Camacho, P.A.*, 595 F. App'x 835, 837 (10th Cir. 2014) (dismissal of claim against provider who offered prisoner hernia belt was proper, as offering the belt did not evince "deliberate indifference"); *Winslow v. Prison Health Servs.*, 406 F. App'x 671, 674-75 (3d Cir. 2011) (complaint properly dismissed against provider, as provider gave treatment via a hernia belt, and prisoner only alleged that he was "dissatisfied" with that treatment); *Johnson*, 433 F.3d at 1014 (doctors who saw prisoner once and prescribed a belt for treatment were not deliberately indifferent). As for the other Centralia staff, Green says nothing about Shaw and only claims that Finney documented that he was bearing down for a bowel movement in April 2014. Like the allegations against Jane Doe 4 and Santos, nothing there suggests any indifference. So **Count 1** must be dismissed without prejudice as to Jane Doe 4, Santos, Shaw, and Finney.

The allegations against the Pinckneyville medical staff present a closer case. Construing his complaint liberally, Green says that he saw Shah, Rector, Ridgeway, Hill, and Jane Does 1 through 3 after wearing the hernia belt for some time, and reported to them – at varying points – that the belt was doing him no good and that he needed additional treatment. Some of the providers purportedly told him to continue with the belt and others turned him away completely. These allegations could amount to a claim that the Pinckneyville staff knew that the belt was ineffective but did nothing, and that can constitute deliberate indifference. *See*, *e.g.*, *Myrick v. Anglin*, 496 F App'x 670, 674-75 (7th Cir. 2012) ("prison health care staff" may not "persist with treatment they know to be ineffective when reasonable alternatives are available"); *Arnett v. Webster*, 658 F.3d 742, 752 (7th Cir. 2011) (prisoner stated claim against physician when he alleged that providers "persisted in a course of treatment . . . known to be ineffective"). So **Count 1** may proceed as to Shah, Rector, Ridgeway, Hill, and Jane Does 1 through 3.

On the individual defendant level, that leaves Green's allegations against Director Godinez, Warden Spiller (of Pinckneyville), and the Centralia Warden. The claims against Godinez and the Centralia Warden are meritless: all that is alleged against these two is that they operated in "supervisory" positions in the prison system, and that alone is not enough to make them liable for the purportedly improper conduct of those under their charge. *See Vinning-El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011) ("Section 1983 does not authorize supervisory liability."). That said, the claim against Spiller is viable, at least for purposes of screening review. Construing his complaint liberally, Green claims that he wrote emergency grievances to Spiller concerning the ongoing failure to treat his hernia condition yet Spiller did nothing in response, and that is enough to state a claim at this early phase. *See*, *e.g.*, *Santiago v. Wells*, 599 F.3d 749, 758-59 (7th Cir. 2010) (reversing dismissal and holding that grievance informing

warden that officers were placing the prisoner in cells with dangerous inmates "sufficient, at the pleading stage, to state a claim that [the warden] actually knew or consciously turned a blind eye"); *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996) ("[A]n inmate's communications can, under some circumstances, constitute sufficient knowledge of the conditions to require the officer to exercise his or her authority and to take the needed action to investigate and, if necessary, to rectify the offending condition."). Accordingly, **Count 1** may proceed as to Spiller, but is dismissed as to Godinez and the Centralia Warden.

Reading Green's complaint liberally, he also appears to bring a § 1983 claim against Wexford Health Sources (**Count 2**). For purposes of § 1983, the courts treat "a private corporation acting under color of state law as though it were a municipal entity," *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 766 n.6 (7th Cir. 2004), so Wexford will be treated as a municipal entity for this suit. "[T]o maintain a § 1983 claim against a municipality, [a plaintiff] must establish the requisite culpability (a 'policy or custom' attributable to municipal policymakers) and the requisite causation (the policy or custom was the 'moving force' behind the constitutional deprivation)." *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002) (*quoting Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978)). Here, Green has only claimed that Wexford provides general "rules, regulations, policies, and procedures" for the medical care of prisoners at Centralia and Pinckneyville. (Doc. 1 at 2-3.) He has not alleged any concrete policy or custom attributable to Wexford, nor has he claimed that any act by Wexford led to his alleged deprivation of rights. *See Olive v. Wexford Corp.*, 494 F. App'x 671, 673 (7th Cir. 2012) (allegation that Wexford had a policy of "denying prison inmates adequate medical care" insufficient, as it did not "identify any concrete policy, let alone an unconstitutional one"). As such, **Count 2** against Wexford Health Sources must be dismissed without prejudice.

Over and above his individual claims, Green seeks preliminary injunctive relief in his complaint, asking that the Court issue a preliminary injunction whereby Defendants will provide Green access to "an outside facility" where his hernia can be properly diagnosed and treated. The Court's preliminary review dictates that Plaintiff's request for injunctive relief deserves consideration. Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c), Plaintiff's request for a preliminary injunction will be referred to Magistrate Judge Philip M. Frazier, who shall resolve the request and issue a report and recommendation. Warden Spiller is already named in this suit in his individual capacity, and will be added in his official capacity for the purposes of responding to any injunctive orders. *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011).

One closing note concerning Jane Does 1 through 3: these nurses must be identified with particularity before service of the complaint can occur on them. Where a prisoner's complaint states specific allegations describing the conduct of unknown prison staff sufficient to raise a constitutional claim against them, the prisoner should have the opportunity to engage in limited discovery in order to ascertain the identity of those defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). In this case, guidelines for discovery aimed at identifying Jane Does 1 through 3 will be set by the magistrate judge, so that Plaintiff can identify those individuals. While Warden Spiller (of Pinckneyville) is already named in this suit in an individual capacity, he will also remain in his official capacity to assist with identifying these individuals. Once Jane Doe 1, Jane Doe 2, and Jane Doe 3 are identified, Green shall file a motion to substitute the named individuals with these Jane Doe designates.

### Disposition

**IT IS HEREBY ORDERED** that, for the reasons stated, **COUNT 1** shall **PROCEED** against **SPILLER**, **SHAH**, **RECTOR**, **RIDGEWAY**, **HILL**, **JANE DOE 1**, **JANE DOE 2**,

and **JANE DOE 3**. **COUNT 1** is **DISMISSED without prejudice** as to **GODINEZ**, the **CENTRALIA WARDEN**, **SANTOS**, **SHAW**, **FINNEY**, and **JANE DOE 4**. Because there are no further claims against them, **GODINEZ**, the **CENTRALIA WARDEN**, **SANTOS**, **SHAW**, **FINNEY**, and **JANE DOE 4** are **DISMISSED** from this case.

**IT IS FURTHER ORDERED** that **COUNT 2** is **DISMISSED without prejudice**. Because there are no further claims against it, **WEXFORD HEALTH SOURCES** is **DISMISSED** from this case.

**IT IS FURTHER ORDERED** that Warden **SPILLER** will be named in this case in his official capacity as well as his individual capacity, in order to respond to Plaintiff's request for injunctive relief and to assist in the identification of the Jane Doe defendants.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Service of Process at Government Expense (Doc. 4) is **GRANTED**. Service shall be ordered as indicated below.

**IT IS FURTHER ORDERED** that the Clerk of Court shall prepare for Defendants **SPILLER**, **SHAH**, **RECTOR**, **RIDGEWAY**, and **HILL**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the Jane Doe defendants until such time as Plaintiff has identified them by name in a properly filed amended complaint. It is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered) a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Philip M. Frazier for further pre-trial proceedings.

**IT IS FURTHER ORDERED** that Plaintiff's pending Motion for Recruitment of Counsel (Doc. 3) is **REFERRED** to Magistrate Judge Philip M. Frazier for consideration.

**IT IS FURTHER ORDERED** that, pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c), Plaintiff's pending request for preliminary injunctive relief is hereby **REFERRED**

to Magistrate Judge Philip M. Frazier, who shall resolve the request for injunctive relief and issue a report and recommendation. The period for filing any objections to Magistrate Judge Frazier's report and recommendation shall not exceed **14 days** from the date of the report. Any motions filed after the date of this Order that relate to the request for injunctive relief or seek leave to amend the complaint are also **REFERRED** to Magistrate Judge Frazier.

Further, this entire matter is **REFERRED** to Magistrate Judge Philip M. Frazier for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action

for want of prosecution.  *See* F̶ED. R. C̶IV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: July 6, 2015**

s/ STACI M. YANDLE
**UNITED STATES DISTRICT JUDGE**