IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JERMELL GREEN, M43000,
        *Plaintiff,*

v.

SALVADOR GODINEZ, et al.,
        *Defendants*.

Case Number:  3:15-cv-00589-SMY-PMF

## REPORT AND RECOMMENDATIONS

**FRAZIER, Magistrate Judge:**

    This is a prisoner civil rights lawsuit. Plaintiff Jermell Green is a prisoner with the Illinois Department of Corrections ("IDOC") and he is currently incarcerated at Pinckneyville Correctional Center ("Pinckneyville"). The defendants consist of one IDOC employee and several Wexford Health Sources, Inc. ("Wexford") employees. Wexford is a healthcare contractor that provides medical services to IDOC inmates. Green proceeds in this lawsuit on a single count of Eighth Amendment deliberate indifference to serious medical needs. In early 2014 Green was diagnosed as having a hernia and he asserts that the defendants failed to adequately treat the condition. The defendants now seek summary judgment and argue that plaintiff Jermell Green failed to exhaust administrative remedies prior to filing suit. Green filed a response in opposition. (Doc. 50). Although Green had filed multiple grievances addressing his medical care, the record was clear that he did not properly complete the grievance process. However, there was a dispute as to whether the grievance process was available to Green, and on June 7, 2016 a *Pavey* evidentiary hearing was held with the plaintiff in attendance. See *Pavey v.*

*Conley*, 544 F.3d 739, 742 (7th Cir. 2008). For the following reasons, it is recommended that the defendants' motion for summary judgment be GRANTED.

According to the complaint, in early 2014 Green was lifting weights in the Centralia Correctional Center ("Centralia") gym when he began to experience sharp pains in his groin. (Doc. 1, p. 4). Green went to the Centralia health care unit and he was diagnosed as having a hernia. *Id.* Sometime shortly thereafter, Green was transferred from Centralia to Pinckneyville. *Id.*[1] Green continued to experience problems related to his hernia, and he would ultimately file the following six grievances on the issue:

- Two grievances filed July 29, 2014 at Pinckneyville. (Doc. 50-1, p. 12-14). Both filed as emergency grievances. Warden denied both as non-emergencies on September 22, 2014.
- Grievance filed February 5, 2015 at Pinckneyville. (Doc. 50-1, p. 16). Denied by counselor on March 16, 2015.
- Grievance filed February 8, 2015 at Pinckneyville. (Doc. 50-1, p. 3). Denied by counselor on March 23, 2015.
- Grievance filed March 1, 2015 at Pinckneyville. (Doc. 50-1, p. 6). Denied by counselor on March 16, 2016.
- Grievance dated March 22, 2015 and sent directly to the ARB. (Doc. 50-1, p. 9). Grievance was not reviewed by counselor or Pinckneyville administration.

In late March 2015, Green sent all six grievances to the IDOC Administrative Review Board ("ARB") in Springfield and the ARB denied all six of the grievances on April 27, 2015 because of procedural defects. (Doc. 50-1).

Specifically, the two July 29, 2014 grievances were deemed procedurally defective because Green sent the grievances to the ARB after the 30 day deadline. If a prisoner would like to appeal a grievance to the ARB, the prisoner must do so within 30 days after the Warden issues

---

[1] In his complaint, Green included claims against staff at both Centralia and Pinckneyville. The claims against the Centralia employees were later dismissed at 28 U.S.C. § 1915A screening, and so now the defendants in this case are only Pinckneyville employees. See Judge Yandle's order at Doc. 7.

a decision on the grievance. Ill. Admin. Code tit. 20, § 504.850(a). The February 5, February 8 and March 1 grievances were procedurally defective because Green never submitted them to the prison grievance officer. The IDOC implements a three step grievance process for normal, non-emergency grievances. The prisoner first submits the grievance to their counselor. Ill. Admin. Code tit. 20, § 504.810. If the prisoner is dissatisfied with the counselor's response, the prisoner can submit the grievance to the prison grievance officer. *Id.* The prison grievance officer will review the grievance and issue a decision that is approved by the Warden. Ill. Admin. Code tit. 20, § 504.830. If the prisoner is dissatisfied with the response from the institution, the prisoner may then appeal to the ARB. Code tit. 20, § 504.850(a). The grievance process is completed when the ARB issues a decision. The February 5, February 8 and March 1 grievances were defective because Green submitted them to the ARB directly after receiving the counselor's response, thereby skipping step two (sending the grievance to the grievance officer). The March 22, 2015 grievance was defective because Green bypassed the institutional grievance process entirely by sending the grievance directly to the ARB.

Green drafted all of his grievances on the standard IDOC grievance form. The form states in part:

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Recort, etc.) and send to:

Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.

Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.

Chief Administrative Officer, only if EMERGENCY grievance.

> Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

(Doc. 50-3, p. 1).

The ARB denied all of Green's grievances on April 27, 2015 and Green filed this lawsuit on May 28, 2015. (Doc. 1). Pursuant to 42 U.S.C. § 1997e(a), prisoners are required to exhaust "available" administrative remedies prior to filing conditions of confinement type lawsuits in federal court. A prisoner does not need to plead exhaustion in their complaint, but the failure to exhaust may be raised by a defendant as an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 212, 127 S. Ct. 910, 919, 166 L. Ed. 2d 798 (2007). The defendants in this case raised the exhaustion defense and they now seek summary judgment. (Doc. 34 and 36).[2]

Green filed a response in opposition. (Doc. 49 and 50). In his response, Green does not dispute the general timeline of events set forth in the defendants' motion for summary judgment. However, Green states that he submitted his grievances in the manner he did upon the advice of his counselor, Jarrod Selby. In an affidavit attached to his response, Green states:

> J. Selby advised that he was the only person at Pinckneyville Correctional Center who would handle my complaints as he was the counselor for my housing unit, unless I thought it was an emergency and then I could file the grievance directly to the Warden. J. Selby explained that if I didn't like his response or the Warden's response, I would need to file an appeal with the Administrative Review Board. He did not offer me any other forms to file grievances or tell me to file grievances with any other persons.

---

[2] The Wexford defendants filed their answer late in this matter (See Doc. 40), but at the *Pavey* hearing they were granted leave to join defendant Spiller's motion for summary judgment.

(Doc. 50-2). Green essentially argues that his counselor misrepresented the IDOC administrative remedies process. Although the Seventh Circuit has taken a "strict compliance approach to exhaustion," *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006), the administrative remedies process will be deemed "unavailable" if prison officials "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, No. 15-339, 2016 WL 3128839, at *8 (U.S. June 6, 2016). If the grievance process is unavailable, exhaustion is not required. *Id.* A *Pavey* hearing was therefore held to determine whether the administrative remedies process was "available" to Green.

The *Pavey* hearing was held on June 7, 2016 with Green in attendance in person. The defendants produced one witness; counselor Jarrod Selby. Selby testified that he has been a counselor at Pinckneyville for about eighteen months and that he is familiar with the IDOC grievance process. As a correctional counselor, he assists inmates with various issues and responds to inmate grievances. Selby testified that he did not remember discussing the grievance process with the plaintiff, but that he did have a favorable relationship with Green. Additionally, Selby testified that prison records indicated that Green had received a Pinckneyville prisoner orientation manual upon arriving at the facility.

Green also testified at the hearing. Green stated that he arrived at Pinckneyville as part of a "seg to seg" transfer. Green testified that his affidavit attached to his response to the defendants' motion for summary judgment is an accurate description of his communications with counselor Shelby. Green said that his interactions with Shelby had been brief and that Shelby probably viewed him as a "nuisance," but Green stated that Shelby had never been disrespectful towards him. Green also said that he did not receive an inmate orientation manual at Pinckneyville, but he had read the inmate manual provided to him at Centralia.

When Green's experience with the IDOC administrative remedies process is viewed as a whole, the Court finds that counselor Shelby's statements were not so misleading as to make the grievance process "unavailable" to Green. At worst, Shelby provided Green with some ambiguous guidance as to how to complete the IDOC grievance process. However, Green admitted reading the Centralia prisoner handbook, which included a guide to the grievance process. Furthermore, the grievance forms include directions that instruct the prisoner as to where the forms should be sent. While the directions included on the grievance forms are not exactly a model of clarity, the forms do state that they should only be sent to the ARB if the issue has not been resolved by the Chief Administrative Officer (i.e., the Warden). Because none of Green's six grievances had been reviewed by the Warden (except for the 2 emergency grievances from 2014 that were submitted to the ARB past the 30 day deadline), Green should have known that sending them to the ARB would be premature. The grievance process was therefore available to Green, and he did not properly exhaust. The defendants' motion for summary judgment should be granted.

SO RECOMMENDED.

Dated: June 10, 2016

s/ Philip M. Frazier  
**PHILIP M. FRAZIER**  
**UNITED STATES MAGISTRATE JUDGE**